IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.                                           Civ. No. 12-25

FUNDS IN THE AMOUNT OF $220,271.00
FROM ACCOUNT NO. **3478 PEOPLES BANK,

FUNDS IN THE AMOUNT OF $12,302.40
FROM ACCOUNT NO. **3451 PEOPLES BANK,

FUNDS IN THE AMOUNT OF $975.00
FROM ACCOUNT NO. **6035 PEOPLES BANK,

    *Defendants,*

*and*

INSPIRATIONAL EQUITIES,
SHADOW SYSTEMS,
LANDMARK UNLIMITED, LLC,

    *Claimants.*

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff states:

**JURISDICTION AND VENUE**

1.    This is a civil action *in rem* for forfeiture of Defendants which have been located and will be arrested by execution of a Warrant for Arrest in the District of New Mexico; and during the pendency of this action Defendants, or their equivalent or proceeds thereof, will be subject to the jurisdiction of this Court.

2. The United States District Court for the District of New Mexico has exclusive, original jurisdiction under 28 U.S.C. §§ 1345, 1355 and 1356.

3. Venue is proper under 28 U.S.C. §§ 1355 and 1395.

4. The "res" or property which is the subject of this action consists of the following funds from the following accounts at Peoples Bank in Albuquerque, New Mexico:

    a. funds of $220,271.00 from account number ending in **3478;

    b. funds of $12,302.40 from account number ending in **3451; and

    c. funds of $975.00 from account number ending in **6035;

(hereafter referred to as "Defendant Funds").

## PARTIES AND CLAIMANTS

5. The following may claim an interest in the Defendant Funds:

    (a). Inspirational Equities, P.O. Box 13074, Albuquerque, NM 87192; and/or Rodney Chavez, Managing Director, Inspirational Equities (trust), 1515 Garcia Street NE, Albuquerque, NM 87112, whose attorney is Timothy M. Padilla, 1412 Lomas Blvd. NW, Albuquerque, NM 87104.

    (b). Shadow Systems, P.O. Box 13074, Albuquerque, NM 87192; and/or Shadow Systems, P.O. Box 37158, Albuquerque, NM 87176; and/or Rodney Chavez, Sole Proprietor, Shadow Systems, 1515 Garcia Street NE, Albuquerque, NM 87112, whose attorney is Timothy M. Padilla, 1412 Lomas Blvd. NW, Albuquerque, NM 87104.

    (c). Landmark Unlimited, LLC, P.O. Box 13074, Albuquerque, NM 87192;

and/or Agent D.S. Cobley, Landmark Unlimited LLC, 5901-J Wyoming Blvd NE #193, Albuquerque NM 87109; and/or Landmark Unlimited LLC, 1520 Calle de Ranchero NE, Albuquerque, NM 87109; and/or Rodney Chavez, Manager, Landmark Unlimited LLC, 1515 Garcia Street NE, Albuquerque, NM 87112, whose attorney is Timothy M. Padilla, 1412 Lomas Blvd. NW, Albuquerque, NM 87104.

### STATEMENT OF FACTS

The circumstances from which the claim for forfeiture of defendant arise are:

6. From approximately June 2004 through July 2008, at least 30 people (hereafter "Investors") invested a total of approximately $7,000,000 in real estate holdings located in Puerto Peñasco, Mexico, based on the expectation of receiving regular interest payments plus the return of their principal investment amounts. This investment project was designed and operated by an entity known as Puerto Penasco Getaway LLC ("PPG").

7. In approximately April 2008, PPG last paid interest to Investors.

8. In or about November 2009, Wayne Church ("Church") contacted Gilbert Lovato ("Lovato"), co-founder of PPG. According to Lovato, Church informed Lovato that he had recently purchased the PPG investment interest of Richard Hawley, one of the original PPG Investors.

9. By the spring of 2010, PPG could not afford to pay the homeowners association dues owed on the Mexico properties. Only approximately $4,000,000 of the $7,000,000 invested with PPG was actually invested in properties in Mexico. The Investors recognized that they would not be able to recoup the full amounts of their original investments, and elected to sell the properties in Mexico.

10. In the spring of 2010 Church told Lovato that he should give the Investors a chance to sell the properties for $0.30 on the dollar. Lovato agreed to let Church try to sell the properties for $0.30 on the dollar for the benefit of the Investors.

11. On or about March 1, 2010, Lovato sent an email to the Investors asking if they would take $0.30 on the dollar for their original investments. The Investors agreed to this arrangement.

12. In approximately April 2010, acting on behalf of the Investors, Lovato appointed Church to sell the properties in Mexico. As previously discussed, Church agreed to give the investors $0.30 on the dollar for their original investments. To facilitate this arrangement, Lovato gave Church a power of attorney, which would allow Church to sell the Mexico properties for the benefit of the Investors.

13. From approximately April 2010 through March 2011, purportedly in order to pay closing costs and expenses associated with the sale of the properties, Church contacted the Investors and collected at least $30,000 from them. In connection with this request, Church told several Investors they would receive their investment funds as soon as he paid closing costs and received the funds from the sales of the properties.

14. Peoples Bank account **3478 is owned by Inspirational Equities, which is a trust. Rodney Chavez ("Chavez") is the only signer on account **3478, and is the Managing Director of the trust.

15. Peoples Bank account **3451 is owned by Shadow Systems and the sole signer on the account is Rodney Chavez.

16. Peoples Bank account **6035 is owned by Landmark Unlimited, LLC, and the sole signer on the account is Rodney Chavez.

17. Rodney Chavez and Wayne Church are business partners.

18. Based on an Internal Revenue Service ("IRS") investigation, in October 2010, two lots in Mexico were sold, known as the "Cholla Bay lots." On October 26 and 29, 2010, the proceeds of the sales ($7,500 and $7,470 respectively, totaling $14,970) were wired to Peoples Bank account \*\*3478 located in Albuquerque, New Mexico, at Church's direction.

19. From October 27, 2010, to November 30, 2010, Chavez transferred a total of $7,100 from account \*\*3478 to account \*\*3451 in fourteen transfers. Chavez conducted most of these transfers between the Peoples Bank accounts in Albuquerque, NM, by telephonic request, and some of the transfers were conducted in person at the bank. For some of the in-person transfers, Church accompanied Chavez at the bank.

20. Based on the IRS investigation, in December 2010, another property in Mexico was sold, known as Villa 16. On December 15, 2010, the proceeds of the sale ($353,289.21) were wired to Peoples Bank account \*\*3478 at Church's direction.

21. After those funds were received in account \*\*3478, Chavez transferred and/or withdrew over $330,000, including $132,800 that Chavez transferred into accounts \*\*3451 and \*\*6035 as follows. From December 15, 2010, to February 14, 2011, Chavez transferred a total of $52,800 from account \*\*3478 into account \*\*3451 in six transfers. On December 16, 2010, Chavez also transferred $80,000 from account \*\*3478 to account \*\*6035 in one transfer. Chavez conducted most of these transfers between the Peoples Bank accounts in Albuquerque, NM, by telephonic request, and some of the transfers were conducted in person at the bank. For some of the in-person transfers, Church accompanied Chavez at the bank.

22. Based on the IRS investigation, in February 2011, a Mexico property known as Las Palmas Bonita 702 was sold. On February 15, 2011, the proceeds of the sale ($135,350.97)

were wired to Peoples Bank account **3478 at Church's direction.

23. After those funds were received in account **3478, Chavez transferred and/or withdrew over $80,000, including $9,000 that Chavez transferred into account **3451 over two transfers, on February 22, 2011, and April 14, 2011.

24. Based on the IRS investigation, in April 2011, two Mexico properties known as Las Palmas Bonita 701 and 703 were sold. On April 22, 2011, the proceeds of the sale ($343,760.34) were wired to Peoples Bank account **3478 at Church's direction.

25. After those funds were received in account **3478, Chavez transferred and/or withdrew approximately $210,000, including $114,000 that Chavez transferred into accounts **3451 and **6035 as follows. From April 22, 2011, to July 11, 2011, Chavez transferred a total of $80,000 from account **3478 into account **3451 in eleven transfers. On April 26, 2011, and May 26, 2011, Chavez also transferred a total of $34,000 from account **3478 into account **6035 over two transfers. Chavez conducted most of these transfers between the Peoples Bank accounts in Albuquerque, NM, by telephonic request, and some of the transfers were conducted in person at the bank. For some of the in-person transfers, Church accompanied Chavez at the bank.

26. In sum, from October 26, 2010, to April 11, 2011, a total of $847,370.52 in sales proceeds were transferred into account **3478. Of those funds, from October 27, 2010, to July 11, 2011, Chavez transferred a total of $148,900 into account **3451, and from December 16, 2010, to May 26, 2011, he transferred a total of $114,000 into account **6035. In addition to these transfers to accounts **3451 and **6035, Chavez also disbursed sales proceeds from account **3478 via cash withdrawals, bank checks, and transfers into other accounts owned by entities controlled by Church, Chavez, and others.

27. Based on the IRS investigation, none of the Investors received proceeds from the property sales, including any funds from account **3478.

28. Church has told several of the Investors several times that the proceeds of the property sales are sitting in a trust account waiting to be disbursed to the Investors. Church has stopped communicating with the Investors, including Lovato.

29. The following amounts were seized from the following Peoples Bank accounts on July 15, 2011:

$220,271 from account **3478;

$12,302.40 from account **3451; and

$975.00 from account **6035.

### CLAIM FOR RELIEF

30. Defendant Funds are subject to arrest and forfeiture to Plaintiff under 18 U.S.C. § 981(a)(1)(C) because they constitute or are derived from proceeds traceable to a violation of 18 U.S.C. § 1343 (wire fraud), or a conspiracy to commit such offense.

31. Defendant Funds are subject to arrest and forfeiture to Plaintiff under 18 U.S.C. § 981(a)(1)(A) because they are property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 or § 1957, or any property traceable to such property.

WHEREFORE, Plaintiff seeks arrest of Defendant Property and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

KENNETH J. GONZALES
United States Attorney

STEPHEN R. KOTZ
CYNTHIA L. WEISMAN
Assistant U.S. Attorneys
P. O. Box 607
Albuquerque, New Mexico  87103-0607
(505) 346-7274

## 28 U.S.C. § 1746 Declaration

I am a Special Agent with the Internal Revenue Service who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 01-06-2012

Rebakah J. Bott, Special Agent
Internal Revenue Service
Criminal Investigations